UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AVA REALTY ITHACA, LLC,

                              Plaintiff,

                    -v-                         5:19-CV-123

DAVID P. GRIFFIN,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

THE LAW OFFICES OF                    JEFFREY P. DIPALMA, ESQ.
    JORDAN DIPALMA, PLLC
Attorneys for Plaintiff
235 East Main Street
Palmyra, NY 14522

THE LAW OFFICES OF                    BRIDGET M. TALERICO, ESQ.
    JORDAN DIPALMA, PLLC
Attorneys for Plaintiff
502 Court Street, Suite 405
Utica, NY 13502

PINSKY & SKANDALIS                    GEORGE SKANDALIS, ESQ.
Attorneys for Defendant
6723 Towpath Road, Suite 101
East Syracuse, NY 13057

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On January 29, 2019, AVA Realty Ithaca, LLC ("AVA" or "plaintiff") filed this action against David Griffin ("Griffin" or "defendant") seeking common law indemnification and contractual indemnification for costs and payments made in conjunction with a settlement agreement.  Dkt. No. 1.

On February 6, 2019, AVA filed an amended complaint.  Dkt. No. 4. Thereafter, the parties participated in mandatory mediation.  *See* Dkt. No. 11.  After the mandatory mediation proved unsuccessful, Dkt. No. 17, the parties engaged in discovery. *See, e.g.*, Dkt. No. 38.

On April 28, 2022, AVA moved for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure seeking judgment on its common law indemnification claim, and an order dismissing affirmative defenses one through sixteen.  Dkt. No. 46.  Griffin opposed and cross-moved for summary judgment seeking dismissal of the complaint in its entirety, or alternatively, dismissal of plaintiff's contractual indemnification claim and a limitation of plaintiff's damages.  Dkt. No. 58.  The motions are fully briefed and will be decided on the basis of the submissions without oral argument.

## II. <u>BACKGROUND</u>

### A. <u>The Construction Project</u>

AVA is a limited liability company, duly organized and existing under the laws of the Commonwealth of Pennsylvania.[1]  Plaintiff's Statement of Material Facts ("Pl.'s Facts"), Dkt. No. 46-1 ¶ 4; Defendant's Statement of Material Facts ("Def.'s Facts"), Dkt. No. 58-31 ¶ 1.  Its sole member is Ajesh Patel.  Pl.'s Facts ¶ 3; Def.'s Facts ¶ 1.

On or about December 29, 2011, AVA purchased property located at 359 Elmira Road, Ithaca, New York.  Pl.'s Facts ¶¶ 5–6; Def.'s Facts ¶ 1.  On approximately May 12, 2012, plaintiff entered into an agreement with Varish Contractor's International ("Varish") to construct a Fairfield Inn & Suites Hotel on the property.  Pl.'s Facts ¶ 1; Def.'s Facts ¶ 1.  Pursuant to the agreement, Varish was to perform as the general contractor for the construction project.  Pl.'s Facts ¶ 19; Def.'s Facts ¶ 1.  As general contractor, Varish was responsible for performing, controlling, and supervising all work necessary to complete the project.  Pl.'s Facts ¶ 20; Def.'s Facts ¶ 1.  Varish was also responsible for engaging and contracting with any subcontractors it deemed necessary to perform any of the work on the project.  Pl.'s Facts ¶ 24.

---

[1]  The facts are taken from the parties' statements of material facts either where admitted by the other party or from other record evidence.  Disputed facts are flagged and described from each party's point of view.

Varish subcontracted with Aspen General Contractors ("Aspen") to complete the masonry work required to construct the elevator shaft.  Pl.'s Facts ¶ 27.  Aspen then contracted with JKL Construction Services, Inc. ("JKL") to construct the elevator shaft.  *See* Dkt. No. 59-1 at 4–5.[2]  However, in December 2012, JKL's workers left the job due to nonpayment.  *Id.* at 5–6; Def.'s Facts ¶ 2.  As a result, Steven Stafford ("Stafford"), Aspen's project manager, *see* Dkt. No. 59-1 at 29, hired Griffin, along with other workers, to complete the construction of the elevator shaft.  Def.'s Facts ¶¶ 2–11.

## B.  <u>Construction of the Scaffolding</u>

On January 3, 2013, Griffin and the other workers arrived at the hotel to begin their construction of the elevator shaft.  Pl.'s Facts ¶ 32; Def.'s Facts ¶¶ 18–19.  When they first arrived, scaffolding was fully constructed within the elevator shaft.  Def.'s Facts ¶ 19.  Stafford instructed the workers to remove the scaffolding and reassemble it onto the fourth floor because they did not possess enough scaffolding to go up any higher within the elevator shaft.  *Id.* ¶¶ 22–23.

Regarding the disassembly and reassembly of the scaffolding, the parties agree that Griffin participated in the process.  Def.'s Facts ¶ 36.  However,

---

[2] Pagination corresponds to CM/ECF.

the parties largely dispute the extent of defendant's control and discretion over the process.

According to Griffin, it was Stafford who directed and supervised the removal and reassembly of the scaffolding. Def.'s Facts ¶ 34. In particular, defendant maintains that Stafford directed the workers to leave the feet[3] of the scaffolding at the bottom of the elevator shaft, and not reassemble them onto the fourth floor. *Id.* ¶¶ 25, 30.

In contrast, AVA maintains that Stafford did not instruct the workers on how to reassemble the scaffolding, but rather merely told them what work needed to be done. Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Resp."), Dkt. No. 59-5 ¶ 34. Namely, plaintiff contends that Stafford did not instruct Griffin regarding what to do with the feet of the scaffolding, and that defendant made the decision not to use the feet, or an alternative, when reassembling the scaffolding.[4] *Id.* ¶¶ 33, 58.

---

[3] Feet, built under the scaffolding's tube legs, are designed to spread the weight of the scaffold out. Pl.'s Facts ¶ 49. Otherwise, the weight of the scaffold would be concentrated on the tube legs. *Id.*

[4] The parties also agree that Jason Fluke, the site supervisor of Varish, who was responsible for inspecting the work performed by subcontractors, saw the reconstructed scaffolding on the fourth floor and did not comment on the manner in which the scaffolding was reconstructed. Def.'s Facts ¶¶ 47—48, 64, 66.

**C.  <u>The Accident</u>**

On the morning of January 5, 2013, Griffin and another worker, Patrick Gerrard, were laying block while standing on the reconstructed scaffolding. *See* Dkt. No. 46-12 at 73–74.  As the two men were standing on the scaffolding, the front tube legs of the scaffolding punched through the fourth-floor decking.  Pl.'s Facts ¶¶ 54–55; Def.'s Facts ¶ 80.  When the legs punched through the decking, the scaffolding shifted forward towards the shaft opening causing defendant and Gerrard to fall into the shaft.  Pl.'s Facts ¶ 56.  As a result of the fall, Gerrard suffered numerous injuries, the most significant being a T10-T11 fracture resulting in permanent paraplegia from his waist down.  *Id.* ¶ 57.

**D.  <u>Lawsuits in State Court</u>**

In 2013, Gerrard commenced a lawsuit against AVA *inter alios*, in the Supreme Court, Tompkins County.  Pl.'s Facts ¶ 58.  Gerrard set forth causes of action against plaintiff under N.Y. Labor Law §§ 200, 240(1) and 241(6), as well as a claim for common law negligence, all arising from his fall from the scaffolding.  *Id.* ¶ 59.

Subsequent to the commencement of the action and after the matter was joined by AVA, Gerrard made a motion for partial summary judgment pursuant to N.Y. C.P.L.R. 3212 seeking an order establishing liability of

plaintiff and Varish pursuant to Labor Law § 240(1).  Pl.'s Facts ¶ 60.

Plaintiff cross-moved for summary judgment seeking dismissal of all claims

and cross-claims against it.  *Id.* ¶ 61.  After considering all papers submitted

and hearing oral argument of the parties, the court granted Gerrard's motion

finding *inter alia*, plaintiff liable pursuant to the absolute liability mandates

of Labor Law § 240(1).  *Id.* ¶ 62.  The court also found that plaintiff did not

supervise or control the injury producing work and granted plaintiff's motion

dismissing Gerrard's Labor Law § 200 and common law negligence claim.  *Id.*

¶ 63.

   After Gerrard's filing, Griffin also began a personal injury action against

AVA, Varish, and Aspen, in the Supreme Court, Tompkins County.  Pl.'s

Facts ¶ 64.  Defendant made various claims against plaintiff including claims

under Labor Law §§ 240, 241-a, 241(6) and 200.  *Id.* ¶ 65.  While defendant

also brought a claim for common law negligence, he did not include plaintiff

in his prayer for relief under that cause of action and did not make any

allegations that plaintiff supervised or controlled the injury producing work,

but rather limited such allegations to Varish and Aspen.  *Id.* ¶ 66.

   Moreover, both Griffin and Gerrard made workers' compensation claims

against Aspen.  Pl.'s Facts ¶ 69.  Other parties-in-interest to these claims

were Varish Construction Co., Varish Construction, Inc. and WTT, LLC.  *Id.*

¶ 70.  AVA was not a party to either claimant's workers' compensation claims.  *Id.* ¶ 72.  Each claimant settled his claim with Westfield Insurance Co. pursuant to N.Y. Workers' Compensation Law § 32.  *Id.* ¶ 73.  As a result of the settlements, both defendant and Gerrard withdrew their respective claims with prejudice.  *Id.* ¶ 74.

**E. Settlement**

The jury trial in the matter of *Gerrard v. AVA Realty Ithaca, LLC*, was set to commence on January 29, 2018, in Supreme Court, Tompkins County. Pl.'s Facts ¶ 76.  Before jury selection began, counsel for Gerrard indicated that one of his expert witnesses had become unavailable as the result of a medical emergency and that it was counsel's intention to go forward with a substitute expert.  *Id.* ¶ 80.  The trial court indicated that it would likely grant an application by the defendants to preclude Gerrard from offering a substitute expert without a new report being generated by such expert.  *Id.* ¶ 81.

After the trial was adjourned, *see* Dkt. No. 46-13, the parties engaged in settlement discussions of three separate matters: *Gerrard v. Realty Ithaca, LLC et al*, *Griffin v. AVA Realty Ithaca, LLC et al*, and *Westfield Ins. Co. v. Varish Construction, Inc. et al.*  Pl.'s Facts ¶¶ 83–84.  All counsel present

participated in the settlement negotiations.  *Id.* ¶ 83.  Ultimately, a

settlement agreement was reached and put on the record.  *Id.* ¶ 86.

Subsequently, a formal settlement agreement with a general release was

executed by all parties, including Griffin, whose signature was notarized by

his attorney.  Pl.'s Facts ¶ 95.  The agreement incorporated by reference all of

the terms set forth on the record.  *Id.* ¶ 96.  Included in the agreement was

the following language:

> 4(i) Plaintiff, David Griffin, acknowledges that the
> release of claims set forth by the parties to the
> Agreement does not include the waiver of any claim by
> AVA realty Ithaca LLC to seek common
> law indemnification from David Griffin both in his
> individual capacity and as David Griffin Masonry.
> 4(j) Plaintiff, David Griffin, both in his individual
> capacity and as David Griffin Masonry, acknowledges
> and agrees that he is hereby releasing the Releasees
> from any and all claims as set forth in Paragraph "3"
> and that he will not revive or assert any cross-claims
> and/or third-party claims against any Releasee in the
> event AVA Realty Ithaca LLC seeks common law
> indemnification from David Griffin, both in his
> individual capacity or as David Griffin Masonry.

Pl.'s Facts ¶ 96.

**F.  Settlement Payments to Gerrard**

Pursuant to the terms of the settlement agreement, AVA and its insurer,

Liberty Mutual Insurance Co./Peerless Ins. Co. (collectively "Liberty"), both

made contributions to Gerrard for a total amount of $2,200,000.00.  *See* Pl.'s Facts ¶ 98–106.

### 1. AVA's Payments

On April 16, 2018, AVA wired $1,400,000.000 to its attorneys, Osborn Reed & Burke, LLP ("ORB") for payment of its settlement obligations to Gerrard.  Pl.'s Facts ¶ 98.  On May 21, 2018, ORB issued and sent a check to Rehlman, Shafer & Shafer, as attorneys for Gerrard, in the amount of $1,400,000.00 to complete plaintiff's settlement payment to Gerrard.[5]  *Id.* ¶ 99.  The check cleared ORB's bank account on May 23, 2018.  *Id.* ¶ 100.

### 2. Liberty's Payments

As part of the structured settlement, Liberty agreed to purchase two annuities with the payments going to Gerrard and his attorney, Robert Shafer, Esq.[6]  Pl.'s Facts ¶ 102.  The total of the two annuities was $800,000.00.  *Id.* ¶ 103.  The purchase of the annuities was coordinated by Ringler Associates, Inc., which selected the annuity companies and facilitated Liberty's purchase.  *Id.* ¶ 104.

---

[5]  While Griffin does not dispute that AVA wired $1,400,00.00 to its attorneys, or that ORB sent a check to Gerrard's attorneys, defendant does deny that the payment involved the settlement with Gerrard, only.  *Id.*  However, defendant has not supported this denial with any affirmative evidence demonstrating that the payments made by plaintiff were for anyone other than Gerrard.  As such, there is no genuine dispute of material fact.

[6]  Although the original settlement called for Liberty to contribute $1,000,000.00, the payment was later reduced to a structured settlement, requiring Liberty to purchase annuities in the amount of $800,000.00.  Pl.'s Mem., Dkt. No. 46-23 at 23 n.1; Pl.'s Facts ¶ 101.

## G. __Attorney's Fees and Costs__

ORB was retained by Liberty to represent AVA in the matter of *Gerrard v. AVA Realty Ithaca, LLC et al.*[7]  Pl.'s Facts ¶ 107.  According to plaintiff, in conjunction with its defense in the matter *Gerrard v. AVA Realty Ithaca, LLC et al.*, ORB was paid $128,298.36.[8]  *Id.* ¶ 108.  Plaintiff also maintains that it has accumulated $9,301.42 in costs associated with ORB's defense of it in *Gerrard v. AVA Realty Ithaca, LLC et al.*, which were either reimbursed or directly paid by Liberty.  *Id.* ¶ 109.

## III. __LEGAL STANDARD__

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

---

[7]  Griffin does not dispute that ORB was retained to represent AVA in the Gerrard lawsuit, however, defendant denies that ORB was retained solely for that lawsuit.  Defendant's Response to Plaintiff's Statement of Material Facts ("Def.'s Resp."), Dkt. No. 63 ¶ 107.

[8]  Griffin denies this and contends that it is AVA's burden to establish that the legal fees for which it seeks recovery against Griffin in this indemnification action includes only legal fees and expenses related to the Gerrard personal injury litigation, and not for plaintiff's involvement in other various related collateral matters.  Def.'s Resp. ¶¶ 107–109.

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted).  Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

"Where, as here, the parties have cross-moved for summary judgment, a reviewing court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *United States v. Bedi*, 453 F. Supp. 3d 563, 570 (N.D.N.Y. 2020) (cleaned up).  "In undertaking this analysis, it bears noting that a district court is not required to grant judgment as a matter of law for one side or the other." *Id.*

## IV. **DISCUSSION**

AVA's motion for partial summary judgment seeks judgment on its first claim, common law indemnification, and dismissal of Griffin's affirmative defenses one through sixteen.  Dkt. No. 46.  Defendant's cross-motion for summary judgment seeks dismissal of plaintiff's complaint in its entirety. Dkt. No. 58.

## A.  <u>Contractual Indemnification</u>

Griffin's cross-motion for summary judgment seeks dismissal of AVA's contractual indemnification claim.  Dkt. No. 46.  Upon review, this claim has been abandoned.

"Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."  *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (citation omitted); *see also Frantti v. N.Y*, 414 F. Supp. 3d 257, 291 (N.D.N.Y. 2019).  As the Second Circuit has explained:

> Generally, but perhaps not always, a partial response [to a motion for summary judgment] reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others.  Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them.  Moreover, preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses.  Indeed, Rule 56 is known as a highly useful method for narrowing the issues for trial.

*Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014).

Absent from AVA's opposition to Griffin's cross-motion for summary judgment is any reference to defendant's argument that its contractual

indemnification claim should be dismissed.  *See* Pl.'s Opp'n, Dkt. No. 59-6 at

31.  Rather, plaintiff's memorandum focuses entirely on asserting its

entitlement to common law indemnity.  *Id.*

Further, in a letter dated July 18, 2022, AVA notes that it "has conceded

that discovery has revealed that its claim for contractual indemnification is

not supported by the evidence in the record and therefore defendant's cross-

motion on contractual indemnity should be granted."  Dkt. No. 61.  Thus, it is

apparent that plaintiff's contractual indemnification claim has been

abandoned.  As a result, plaintiff's contractual indemnification claim shall be

dismissed.

### B. **Common Law Indemnification**

AVA's motion for partial summary judgment seeks judgment on its

common law indemnification claim, whereas Griffin's cross-motion for

summary judgment seeks dismissal of this claim.  For the following reasons,

plaintiff's motion with respect to this claim shall be granted.

According to AVA, in the matter of *Gerrard v. AVA Realty Ithaca, LLC et

al.*, the Supreme Court, Tompkins County, determined that plaintiff was not

negligent in its actions relating to Gerrard's fall, but nevertheless was

vicariously liable pursuant to Labor Law § 240(1) for Gerrard's injuries.

Compl. ¶ 43.  Plaintiff asserts that its vicarious liability was "premised upon

the finding that the scaffolding that Mr. Gerrard was on at the time of the accident was negligently constructed as the result of the failure to attach the scaffolding's base plates, or an appropriate alternative, which would have prevented its collapse." *Id.* ¶ 44.  Thus, plaintiff asserts that because it was Griffin who negligently constructed the scaffolding, it is entitled to be indemnified by defendant for settlement payments, fees, and costs.  *Id.* ¶¶ 45–55.

Common law indemnification, a restitution concept, permits shifting one party's loss to another because the failure to do so would result in the unjust enrichment of one party at the expense of the other.  *McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794, 798 (2011).  "In a 'classic indemnification case,' the party seeking common-law indemnification has 'committed no wrong,' but has been held liable or exposed to liability to the injured party 'by virtue of some relationship with the tort-feasor or obligation imposed by law.'"  *Haraden Motorcar Corp. v. Bonarrigo*, 2021 WL 4906989, at *5 (N.D.N.Y. Oct. 21, 2021) (citations omitted).  Indeed, it is well settled that an owner who is held strictly liable under Labor Law § 240(1) is entitled to full indemnification from the party responsible for the incident.  *Chimbay v. AvalonBay Communities, Inc.*, 742 F. Supp. 2d 265, 277 (E.D.N.Y. 2008).

To be entitled to common law indemnification, a party must show that: (1) it has been held vicariously liable without proof of any negligence or actual supervision on its part; and (2) the proposed indemnitor was either negligent or exercised actual supervision or control over the injury-producing work. *McCarthy*, 953 N.E.2d at 801.

There is no dispute as to the first prong.[9]  The parties agree that AVA was held vicariously liable under Labor Law § 240(1) in the state court action *Gerrard v. AVA Realty Ithaca, LLC.  See* Pl.'s Facts ¶¶ 61–63.  The parties also agree that the basis for the determination arose from plaintiff's ownership of the property where the incident occurred.  *See id.*  There was no showing that plaintiff was negligent.  *See id.*  In fact, the court found that plaintiff did not supervise or control the injury producing work and granted plaintiff's motion dismissing Gerrard's Labor Law § 200 and common law negligence claim.  *Id.* ¶ 63.  Accordingly, plaintiff has satisfied the first prong of the test as a matter of law.[10]

---

[9]  Griffin does argue as an affirmative defense that AVA "exerted undue economic pressure on Varish and Aspen to complete the masonry work on the elevator shaft," and that this "active conduct by AVA was a direct and proximate cause of the inadequate safety measures . . . ."  Answer, Dkt. No. 52 ¶¶ 51–55.  However, this defense has been abandoned as discussed *infra*.

[10]  The parties have engaged in a discussion as to whether Griffin is collaterally estopped from arguing that AVA was negligent.  *See* Pl.'s Mem. at 12–13.  However, because defendant does not dispute that plaintiff has met this first prong, the issue of collateral estoppel is immaterial for purposes of this motion.

AVA argues that it has also met the second prong of the test.  *See* Pl.'s Mem. at 10–16.  As noted *supra*, the second prong requires a showing that Griffin "was either negligent or exercised actual supervision or control over the injury-producing work."  *McCarthy*, 953 N.E.2d at 801.

Griffin argues that AVA cannot make this showing because the work was done "by the order of and to the satisfaction of Aspen and Varish."  Def.'s Mem., Dkt. No. 58-32 at 4.  Namely, defendant asserts that Stafford, Aspen's project manager and a non-party to this action, exerted "complete control" over the workers and their method of work.  *Id.* at 6.  Moreover, defendant asserts that Jason Fluke, Varish's supervisor, and also non-party to this action, "was on the floor Friday, and saw the scaffolding."  *Id.* at 4.  Thus, defendant maintains that "he committed no negligent act . . . ."  *Id.* at 7.

This argument must be rejected.  Griffin concedes that he was directly involved in the deconstruction and reconstruction of the scaffolding.  *See* Def.'s Facts ¶¶ 28, 36.  Defendant also acknowledges that the scaffolding was reconstructed without the feet, which remained at the bottom of the elevator shaft.  *Id.* ¶¶ 26, 38.

Notably, Griffin has not offered any factual or legal basis on which to conclude that it was appropriate to reconstruct the scaffolding without its feet, or an alternative.  Indeed, all available evidence points to the conclusion

that the lack of feet, or an alternative, led to the collapse of the scaffolding. Even defendant acknowledges that "[p]lanks and feet were required under the legs of scaffolding and neither were used . . . ." Def.'s Facts ¶ 82.

Nor has Griffin offered any factual or legal basis on which to conclude that the involvement of a non-party should absolve him of fault or operate as a bar to indemnification. In fact, courts have allowed indemnification claims against a single tortfeasor where multiple tortfeasors were involved in the underlying action. *See, e.g.*, *Lexington Ins. Co. v. Pub. Adm'r of N.Y. Cnty.*, 133 N.Y.S.3d 815 (2020); *Frank v. Meadowlakes Dev. Corp.*, 6 N.Y.S.3d 687 (2006).

This comports with "the equitable underpinnings of common-law indemnification." *McCarthy*, 953 N.E.2d at 799. New York "law imposes indemnification obligations upon those actively at fault in bringing about the injury, and thus reflects an inherent fairness as to which party should be held liable for indemnity." *Id.* Accordingly, Griffin's involvement in the disassembly and reassembly of the defective scaffolding satisfies the second prong.

In sum, because AVA was "held vicariously liable without proof of any negligence or actual supervision on its part" and Griffin was "either negligent or exercised actual supervision or control over the injury-producing work,"

plaintiff's motion for summary judgment on its common law indemnification claim shall be granted.[11]

## C. <u>Affirmative Defenses</u>

AVA's motion for summary judgment also seeks dismissal of Griffin's affirmative defenses one through sixteen.  Pl.'s Mem. at 23–41.

Where a plaintiff uses a summary judgment motion to challenge the legal sufficiency of an affirmative defense, a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case.  *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, 2018 WL 3364388, at *1 (S.D.N.Y. July 9, 2018) (citing *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994)).  "Conversely, if an affirmative defense is supported by evidence from which a reasonable jury could find the defense applicable, then summary judgment must be denied."  *Smith v. Interstate Mgmt. Co. LLC*, 2022 WL 4537947, at *9 (S.D.N.Y. Sept. 28, 2022) (citation omitted).

As an initial mater, "a court may, when appropriate, infer from a party's partial opposition that relevant . . . defenses that are not defended have been

---

[11]  It is also worth noting that the settlement amount was reasonable.  "To procure indemnification for an underlying claim that was voluntarily settled, the indemnitee must demonstrate, *inter alia,* that the settlement amount was reasonable."  *Tokio Marine & Fire Ins. Co. v. Rosner*, 206 F. App'x 90, 95 (2d Cir. 2006).  As relevant here, Griffin has not come forward with any evidence to suggest that the settlement was unreasonable, thus, there is no genuine dispute as to the reasonableness of the settlement.

abandoned." *Jackson*, 766 F.3d at 198; *see also Smith*, 2022 WL 4537947, at *10 (noting that it is within a court's discretion to find that a defendant has abandoned its affirmative defenses).

Griffin's memoranda fail to oppose AVA's challenges to his first, second, third, seventh, eighth, tenth, twelfth, fifteenth, and sixteenth affirmative defenses.[12] *See* Def.'s Mem.; Def.'s Opp'n, Dkt. No. 63. As a result, those affirmative defenses have been abandoned. Accordingly, only defendant's remaining defenses will be discussed. However, for the reasons set forth below, they shall be dismissed.

### 1. **Fourth, Fifth & Sixth Affirmative Defenses**

Griffin's fourth, fifth, and sixth affirmative defenses all depend on his argument that he cannot be found negligent because construction of the scaffolding was performed in accordance with the instruction, direction, and control of non-parties to this action. *See* Def.'s Answer ¶¶ 15–22; *see also* Def.'s Opp'n at 3–5.

As noted *supra*, this argument must be rejected. Griffin admits that he was involved in the construction of the scaffolding, and the available evidence

---

[12] Although Griffin's attorney affidavit does make arguments in support of some of these affirmative defenses, it is in violation of the Local Rules for the Northern District of New York. *See Krause v. Kelahan*, 575 F. Supp. 3d 302, 307 (N.D.N.Y. 2021) (noting that the local rules "expressly forbid raising arguments by affidavit"). Thus, only those arguments raised in defendant's memoranda shall be considered. *See* LOCAL RULE 7.1(a)(3) (stating that papers not in compliance with Local Rule 7.1 shall not be considered unless good cause is shown).

indicates that the lack of feet on the reconstructed scaffolding, or an appropriate alternative, led to the collapse of the scaffolding. Accordingly, AVA is entitled to common law indemnification from defendant. As a result, plaintiff's motion to dismiss defendant's fourth, fifth, and sixth affirmative defenses shall be granted.

### 2. **Ninth Affirmative Defense**

Griffin's ninth affirmative defense asserts that this action should be dismissed under the doctrine of laches because "AVA failed to exercise proper and reasonable diligence in making its indemnification claim against Griffin, and thus should be barred from doing so at this late date." Answer ¶¶ 28–40; *see also* Def.'s Mem. at 9.

"The doctrine of laches 'protect[s] defendants against unreasonable, prejudicial delay in commencing suit.'" *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019) (citation omitted). "A party asserting a laches defense must show that 'the plaintiff has inexcusably slept on [its] rights so as to make a decree against the defendant unfair.'" *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 132 (2d Cir. 2003) (citation omitted). Importantly, "[g]enerally, 'in [the] face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief.'"

*Zuckerman*, 928 F.3d at 195–96 (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 679 (2014)).

"The statute of limitations for an action for common-law indemnity is six years . . . ." *State of N.Y. v. Next Millennium Realty, LLC*, 2007 WL 2362144, at \*18 (E.D.N.Y. Aug. 14, 2007) (citations omitted).  "Under New York law, it is well established that claims for . . . indemnification 'do not accrue for purposes of the Statute of Limitations until the party seeking indemnification or contribution has made payment to the injured party.'"  *Hammond v. Toy Indus. Ass'n, Inc.*, 8 F. Supp. 3d 484, 499 (S.D.N.Y. 2014).

As relevant here, AVA made its payment to Gerrard on May 21, 2018, Pl.'s Facts ¶ 110, and commenced this action on January 30, 2019.  *See* Dkt. No. 2. Thus, this action was commenced within one year of accruing, thereby well within the statute of limitations.  Accordingly, a laches defense cannot be invoked to bar relief, and as a result, plaintiff's motion to dismiss Griffin's ninth affirmative defense shall be granted.

**3.  Eleventh Affirmative Defense**

Griffin's eleventh affirmative defense asserts that he is "entitled to limitations on liability as set forth in CPLR Article 16, and General Obligations Law 15-108.  Answer ¶ 43.

"Under Article 16, a defendant in a personal-injury case whose share of fault does not exceed fifty percent may not be forced to pay more than his share of Plaintiff's noneconomic damages." *Adeyinka v. Yankee Fiber Control, Inc.*, 2009 WL 3154319, at *7 (S.D.N.Y. Sept. 23, 2009); *see also Avis Budget Car Rental, Inc. v. JD2 Env't, Inc.*, 2018 WL 1175709, at *2 (E.D.N.Y. Mar. 6, 2018). "As defined in Article 16, non-economic loss includes but is not limited to pain and suffering, mental anguish, loss of consortium or other damages for non-economic loss." *Geris v. DiSilva Taunton Express, Inc.*, 2014 WL 1516530, at *4 n.1 (W.D.N.Y. Apr. 18, 2014).

AVA asserts that because it is seeking only economic damages, Article 16 is inapplicable. Pl.'s Mem. at 34–35. Indeed, the settlement agreement lacks any reference to non-economic damages, *see* Dkt. Nos. 46-16, 46-17, and the remaining record does not demonstrate that any non-economic damages were allocated to Gerrard. Thus, without any factual or legal basis offered by Griffin on which to conclude that plaintiff is seeking non-economic damages, defendant's assertion that Article 16 entitles him to limitations on liability is unsupported.

GOL § 15-108 "governs the effect of a settlement, release, or covenant not to sue with an alleged tortfeasor." *Williams v. Nik-Net LLC*, 2016 WL 11269180, at *2 (E.D.N.Y. Jan. 7, 2016) (citation omitted). Importantly,

- 23 -

"[h]owever, the New York Court of Appeals has long-held that, in contrast to claims for *contribution*, GOL § 15–108 does not apply to bar claims for common-law *indemnification*." *Id.* (collecting cases) (emphasis in original).

AVA's claim is one for common law indemnification, not contribution. Thus, GOL § 15-108(a) does not apply to limit Griffin's liability.  As such, defendant's eleventh affirmative defense shall be dismissed.

### 4.  **Thirteenth Affirmative Defense**

Griffin's thirteenth affirmative defense asserts that "[w]hatever recovery AVA is entitled to receive . . . should be reduced by an amount proportionate to the settlement paid to Griffin," because "the $6 million settlement fund was contributed to by all of the defendants and third-party defendants (except Griffin), and then was allocated to settle the personal injury claims of Gerrard and Griffin."  Answer ¶¶ 45–46.

In opposition, AVA contends that "the settlement agreement coupled with the record before the court, shows that all of the monies paid by AVA and its insurer went to Mr. Gerrard."  Pl.'s Mem. at 37.  According to plaintiff, "absent from the consolidated settlement agreement is any reference that the monies paid by the various parties were being apportioned by percentage among the plaintiffs."  *Id.*

Indeed, pursuant to the agreement, the monies allocated to settle Griffin's case were released from the court's escrow account, and the money that was held within the escrow account was deposited by Aspen's insurer, Donegal Mutual Insurance Company.  *See* Dkt. No. 46-16 at 9, 31.  Thus, it is apparent that the monies AVA paid pursuant to the agreement were not allocated to defendant.  Rather, it is evident that plaintiff's contribution to the settlement was directed towards settling Gerrard's suit.

Nevertheless, Griffin's attorney affidavit references four documents in support of his position that "the payment by AVA was made to a pool of settlement funds that was contributed to by all of the settling parties . . . ." *See* Dkt. No. 58-1 at 43–44.  However, defendant has failed to provide any basis for the proposition that the existence of a pool of settlement funds precludes plaintiff from recovering the amount it paid to Gerrard.  Thus, because defendant's thirteenth affirmative defense is unsupported, plaintiff's motion to dismiss it shall be granted.

### 5.  Fourteenth Affirmative Defense

Griffin's fourteenth affirmative defense asserts that "[t]he settlement amount paid by AVA constituted a voluntary payment not reasonably made in good faith, by reason of tactics employed by AVA that rejected offers by the Griffin and Gerrard plaintiffs to lower their settlement demand . . ."  and as

such, "AVA should not be rewarded for its unclean hands and failed strategy that disregarded and rejected all reasonable efforts of the parties to negotiate a global settlement of both personal injury claims, releasing all of the parties, including Griffin."  Answer ¶¶ 47–50

Griffin has failed to reference any evidence that supports this defense, *see* Def.'s Mem.; Def.'s Opp'n, and a review of the record indicates a lack of any evidence demonstrating that AVA rejected reasonable settlement offers in bad faith.  Thus, as this defense is unsupported by any evidence in the record, plaintiff's motion to dismiss it shall be granted.

### 6.  Seventeenth & Eighteenth Affirmative Defenses

Although AVA does not seek dismissal of Griffin's seventeenth and eighteenth affirmative defenses, these defenses both relate to plaintiff's contractual indemnification claim, *see* Answer ¶¶ 60–64, and as determined *supra*, plaintiff's contractual indemnification claim has been abandoned. Accordingly, these affirmative defenses shall be dismissed.

### D.  Damages

AVA asserts that it is entitled to damages in the amount of $2,337,599.78, together with statutory interest calculated from May 21, 2018.  Pl.'s Mem. at 23.  According to plaintiff, this amount includes the settlement amount of $2,200,000.00, and $128,298.36 in legal fees and $9,301.42 in costs

accumulated in defense of itself in the Gerrard matter.  *See id.*; Compl. ¶¶ 36–40.

Griffin contends that AVA has not met its burden of establishing its right to attorney's fees.  Def.'s Opp'n at 9–10.  According to defendant, plaintiff's billing records fail to "provide a breakdown of the work performed, or the matter on which that work was performed."  *Id.* at 9.  Moreover, defendant asserts that plaintiff has failed to make "any direct or clear statement that all of the attorney's fees for which reimbursement is sought were spent on the Gerrard defense, only, and that none of the billing involved combined work on the Griffin defense, or the numerous additional lawsuits involving AVA and its attorneys."  *Id.*

The New York common law right of indemnification explicitly permits the right to recover attorney's fees.  *Rivera v. Home Depot U.S.A. Inc.*, 2021 WL 1844973, at *2 (S.D.N.Y. Feb. 10, 2021), *report and recommendation adopted*, 2021 WL 1530051 (S.D.N.Y. Apr. 19, 2021).  The party seeking attorney's fees bears the burden of demonstrating the reasonableness of the fees.  *Id.* (citation omitted); *see also Fed Ex Customer Info. Servs. Inc. v. Leslee Sports, Inc.*, 2010 WL 1404407, at *1 (N.D.N.Y. Apr. 8, 2010); *Marinelli v. Oceanside Knolls, Inc.*, 677 N.Y.S.2d 483 (1998).

"Courts applying New York law 'have broad discretion in determining what constitutes reasonable compensation for legal services.'" *Baring Indus., Inc. v. 3 BP Prop. Owner LLC*, 2022 WL 4560738, at *5 (S.D.N.Y. Sept. 29, 2022) (citation omitted).  "The 'starting point,' however, is a calculation of the 'lodestar' figure." *Document Sec. Sys., Inc. v. Ronaldi*, 2022 WL 2207185, at *4 (W.D.N.Y. June 21, 2022) (citing *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  The "lodestar" figure, which represents a presumptively reasonable fee, constitutes "what a reasonable, paying client would be willing to pay, given that such a party wishes 'to spend the minimum necessary to litigate the case.'" *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  "To arrive at a reasonable fee, courts consider, among other factors, the twelve factors set forth in *Johnson v. Ga. Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Rivera*, 2021 WL 1530051, at *6 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)).

"The fee applicant 'bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed.'" *Rivera*, 2021 WL 1530051, at *6 (quoting *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011)).  Documentation

should specify, for each attorney, the date, the hours expended, and the nature of the work done. *Grant v. Lockett*, 2019 WL 1872967, at *3 (N.D.N.Y. Apr. 26, 2019), *aff'd*, 2021 WL 5816245 (2d Cir. Dec. 8, 2021) (citation omitted).

AVA has failed to meet this burden. In support of its claim to attorney's fees, plaintiff has submitted its billing records and a declaration from its counsel's bookkeeper, "wherein she authenticated said records and averred to the amount of attorney fees and costs that were generated and paid in regard to the defense of *Gerrard v. AVA Realty Ithaca, LLC . . . .*" Pl.'s Opp'n at 26.

Notably, AVA's billing records do not detail the hours expended by each attorney nor the nature of the work done. As a result, it is impossible to determine whether the fees sought were incurred *only* in defending the action by Gerrard, and if so, whether they constitute reasonable compensation for the services rendered. Accordingly, because plaintiff has failed to meet its burden of establishing the reasonableness of the attorney's fees sought, plaintiff's motion to the extent that it seeks attorney's fees shall be dismissed.

## V. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1.  Plaintiff's partial motion for summary judgment (Dkt. No. 46) is GRANTED in part and DENIED in part;

2.  Defendant's cross-motion for summary judgment (Dkt. No. 58) is GRANTED in part and DENIED in part;

3.  Plaintiff is entitled to common law indemnification (Count One) in the amount of $2,200,000.00 in settlement payments and $9,301.42 in costs, for a total amount of $2,209,301.42;[13]

4.  Plaintiff's request for attorney's fees is DENIED; and

5.  Plaintiff's contractual indemnification claim (Count Two) is DISMISSED.

The Clerk of the Court is directed to terminate the pending motions, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.


Dated:  January 25, 2023
  Utica, New York.

David N. Hurd
U.S. District Judge

---

[13] AVA also contends that it is entitled to interest calculated from May 21, 2018, but has offered no legal or factual support for that proposition.  *See* Pl.'s Mem. at 23.